

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-20-00382-CV

———————————————

IN THE INTEREST OF B.S., A CHILD

---

On Appeal from the 30th District Court
Wichita County, Texas
Trial Court No. 186,705-A

---

Before Sudderth, C.J.; Womack and Walker, JJ.
Memorandum Opinion by Justice Womack

# MEMORANDUM OPINION

## I. INTRODUCTION

In this restricted appeal, Appellant Brandon challenges the trial court's child-support-and-conservatorship modification order as to his child B.S. We sustain Brandon's argument that there is error on the face of the record because there is no evidence that B.S.'s mother, Cady, served him with a citation for the modification petition. This deficiency in the proof of service is dispositive of this appeal. Accordingly, we reverse the trial court's judgment and remand this case for proceedings consistent with this opinion, without reaching Brandon's remaining attacks on the trial court's order.

## II. BACKGROUND

In 2017, Brandon, Cady, and the Attorney General agreed to an order appointing both parents as B.S.'s joint managing conservators. The order, which granted standard possession, did not oblige Brandon to pay child support or cash medical support.

On January 14, 2019, Cady filed a petition to modify the order, specifically asking that Brandon be denied visitation, or alternatively, that his possession be limited to supervised visitation. The petition also contained a request for temporary orders, including a temporary restraining order, which the trial court granted two days later. Unable to serve Brandon, on January 29, Cady requested an order extending the TRO, which was granted.

According to an affidavit executed by LaDonna Cowley, a certified process server, she had tried twice to serve Brandon at his residence on January 18. Cowley then went to Brandon's workplace, where she spoke to Brandon's mother, Cheryl. Cheryl told Cowley that Brandon had just left, and she did not know when he would return. Cowley returned to the business twice that afternoon, but Cheryl told her that Brandon had never returned. On January 23, Cowley visited the business three more times; Cheryl told Cowley that she had "just missed him."

Based on this affidavit, Cady moved for alternative service, asserting that reasonable notice of the suit would be achieved by serving Cheryl. The trial court granted the motion, ordering that Cheryl be served—though not indicating her probable location—and that proof of service should state "when the citation was served, on whom it was served, and where it was served."

Three returns of service are found in the clerk's record. The first is dated January 18 and is signed by the process server, but it purports to have served someone other than Brandon,[1] and the process server's signature is not verified. In addition, any implication that Brandon was served conflicts with Cowley's statement in her affidavit that Brandon could not be found on January 18. The second return, apart from the caption and the court clerk's signature, is blank. The third is the citation and return for the temporary orders. The return indicates that it was served

---

[1]Brandon's first name appears on this return, but the surname is wrong.

on Cheryl. That return, however, does not contain a full address of the place of service, the process server's signature, or the expiration date of the process server's Supreme Court certification.

A hearing was held on Cady's request for temporary orders on February 12, 2019. Brandon did not appear.[2] After hearing Cady's testimony, the trial court granted Cady's motion for temporary orders, ended Brandon's visitation, and ordered that he pay child support. On June 9, 2020, the trial court held a hearing on the underlying petition to modify, pointing out that Brandon was not in the courtroom. After hearing Cady's testimony, the trial court granted the petition and appointed Cady as B.S.'s sole managing conservator.

## III. DISCUSSION

### A. Restricted Appeal

To prevail in his restricted appeal, Brandon must show that (1) his notice of appeal was filed within six months of the date the complained-of judgment was signed; (2) he was a party to the suit but did not participate in the hearing that resulted in the judgment; (3) he did not timely file a postjudgment motion, request findings of fact and conclusions of law, or file a notice of appeal within the time permitted under

---

[2]During this hearing, the trial judge referred to the petition as having been "filed January the 31st of 2019 indicating service on January the 21st of 2019, and service of the writ filed February the 1st of 2019 and served on that same day." It is not clear to what the trial judge was referring—no documents appear to have been served on anyone on January 21, much less Brandon.

Rule of Appellate Procedure 26.1(a); and (4) the complained-of error is apparent from the face of the appellate record. *See* Tex. R. App. P. 26.1(c), 30; *Watson v. Watson*, 286 S.W.3d 519, 522 (Tex. App.—Fort Worth 2009, no pet.); *see also Etheredge v. Hidden Valley Airpark Ass'n*, 169 S.W.3d 378, 381 (Tex. App.—Fort Worth 2005, pet. denied) (op. on reh'g) (stating restricted appeal requirements should be "liberally construed"). Cady does not seem to contest that Brandon meets the first three requirements for a restricted appeal. Both sides differ, however, on whether there is error that is apparent from the face of the record.

## B. A Default Judgment is Void if Service of Process is Invalid

When a defendant has not answered a lawsuit, a trial court acquires jurisdiction over the defendant only through proof of proper service. *See* Tex. R. Civ. P. 124 (prohibiting rendition of default judgment unless there is proof of proper service); *Livanos v. Livanos*, 333 S.W.3d 868, 874 (Tex. App.—Houston [1st Dist.] 2010, no pet.) ("A claim of a defect in service of process challenges the trial court's personal jurisdiction over the defendant."). For a default judgment to be properly rendered, the record must affirmatively show that, at the time default was entered, citation was properly served or the defendant waived service. *Garcia v. Ennis*, 554 S.W.3d 209, 214 (Tex. App.—Fort Worth 2018, no pet.). Therefore, to withstand a direct attack on a default judgment, a party obtaining a default judgment must demonstrate that it complied with the rules for service of citation. *Primate Constr., Inc. v. Silver*, 884 S.W.2d 151, 152 (Tex. 1994).

5

There is no presumption in favor of proper issuance, service, and return of citation. *Id.*; *Lytle v. Cunningham*, 261 S.W.3d 837, 840 (Tex. App.—Dallas 2008, no pet.). If the record fails to affirmatively show strict compliance with the Rules of Civil Procedure governing issuance, service, and return of citation, error is apparent on the face of the record, and the attempted service of process is invalid and of no effect. *Id.* When the attempted service of process is invalid, the trial court acquires no personal jurisdiction over the defendant, and the default judgment is void. *Mandel v. Lewisville ISD*, 445 S.W.3d 469, 474 (Tex. App.—Fort Worth 2014, pet. denied). Whether service strictly complied with the rules is a question of law that this court reviews de novo. *See LEJ Dev. Corp. v. Sw. Bank*, 407 S.W.3d 863, 866 (Tex. App.—Fort Worth 2013, no pet.).

## C. Service of Process on Brandon was Defective

There is no evidence that Brandon was served with citation of the petition for modification. There *is* evidence that his mother was served—but not with notice of the actual lawsuit, as required by the rules. Moreover, whatever proof of service on Cheryl that does exist is wholly deficient.

As the child's father, Brandon was entitled to receive notice of Cady's modification petition. *See* Tex. Fam. Code Ann. § 156.003 ("A party whose rights and duties may be affected by a suit for modification is entitled to receive notice by service of citation."). Process server Cowley asserted in her affidavit for alternative service that she was never able to personally serve Brandon on January 18. Despite this, the

6

return of service in the file alleges service on someone (a Brandon with a different last name) on January 18, but Cowley's signature is not verified, nor has she sworn to anything. *See* Tex. R. Civ. P. 107(b)(5) (stating that the return must include "the person or entity served"), (e) ("If the return is signed by a person other than a sheriff, constable, or the clerk of the court, the return must either be verified or be signed under penalty of perjury."); *see also Uvalde Country Club v. Martin Linen Supply Co., Inc.*, 690 S.W.2d 884, 885 (Tex. 1985) (noting petition identified registered agent for service as "Henry Bunting, Jr." but citation and return of service reflected delivery to "Henry Bunting"). Also, the rules require the notation of the expiration date of Cowley's process server certification. Tex. R. Civ. P. 107(b)(10). No such expiration date is noted on the return. *See Wyatt v. Deal*, No. 02-18-00246-CV, 2019 WL 2432156, at *4 (Tex. App.—Fort Worth 2019, no pet.) (mem. op.) (stating absence of expiration date of process server's certification is fatal to return's validity). Thus, because the record fails to reflect that Brandon was properly served with citation of the modification suit, the trial court did not acquire jurisdiction over him.

But, according to Cady, service of the writ of injunction on Brandon's mother should be sufficient. She argues that normal rules of service are not required because "this wasn't a default judgment hearing[,] it was a hearing on a temporary restraining order." For two reasons, this argument is unavailing. First, although there was indeed a hearing on Cady's temporary injunction request, there was also a default hearing on the substance of Cady's petition to modify. In fact, the trial court, in

7

rendering a judgment, found that Brandon "was duly notified, however, [he] failed to appear, and is wholly in default." The written order granting Cady's petition to modify makes clear that Brandon "wholly made default." Not only did this procedure resemble a default judgment, the trial judge appeared to believe it was one.[3] And, of course, this restricted appeal is from the default judgment, not from the trial court's temporary orders. *See* Tex. Fam. Code Ann. § 105.001(e) ("Temporary orders rendered under this section are not subject to interlocutory appeal.").

Second, even if service of the injunction writ on Brandon's mother qualified as service of the underlying modification petition, three fatal issues in *that* return would have prevented a legal service. Although it was apparently "verified" by a notary, Cowley's signature appears nowhere on the return. *Cf.* Tex. R. Civ. P. 107(e) ("The officer or authorized person who serves or attempts to serve a citation must sign the return."); *see McCoy v. McCoy*, No. 02-17-00275-CV, 2018 WL 5993547, at *3 (Tex. App.—Fort Worth Nov. 15, 2018, no pet.) (mem. op.) ("Failure to affirmatively show strict compliance with rule 107 renders attempted service invalid."). Also (again), Cowley's process server certification expiration date is missing. Tex. R. Civ. P. 107(b)(10); *see Wyatt*, 2019 WL 2432156, at *4. Third, other than a logical inference

---

[3]We note that in its "Order On Motion For Alternative Service," the trial court specifically referred to service of the "citation" and how proof of that service should be accomplished. In the context of the pending modification lawsuit, this order could only have referred to the citation deriving from that modification petition and not merely to a motion for temporary orders.

8

from her status as grandmother of B.S., nothing in the record reflects that Cheryl is over sixteen years of age. *See* Tex. R. Civ. P. 106(b)(1) (authorizing substituted service on "anyone older than sixteen at the location specified"); *see Discount Rental, Inc. v. Carter*, No. 10–03–00276–CV, 2004 WL 1007847, at *2 (Tex. App.—Waco May 5, 2004, pet. denied) (mem. op.) (holding service invalid where record failed to indicate citation was left with person over sixteen). Therefore, even insofar as the service of the writ of injunction is concerned, the trial court never secured personal jurisdiction over Brandon.[4]

Cady finally argues that delivery of an injunction writ absolved her of following normal return-of-citation rules in the service of a modification petition. Cady is mistaken. She relies on an outdated version of civil procedure Rule 689. That rule appears to have excused the process server of a writ of injunction from having to sign a return. *See* Supreme Court of Tex., *Final Approval of Amendments to Texas Rules of Civil Procedure*, Misc. Docket No. 11–9250 at 8 (Dec. 12, 2011) (amending specific return of service requirements in Rule 689). The current version of Rule 689, however,

---

[4]Arguably, there is a fourth reason why the service of the temporary orders on Cheryl was invalid; the order authorizing service on Cheryl did not specify a location where she may be found. *See* Tex. R. Civ. P. 106(b)(1) (stating court may authorize service by leaving petition with anyone older than sixteen "at the location specified in the statement"); *see also Steinke v. Mann*, 276 S.W.3d 608, 610 (Tex. App.—Waco 2008, no pet.) ("If the process server derives his authority from the trial court's order and must not deviate from the instructions in that order, then the order must contain specific instructions for the process server to follow. Otherwise, the order is defective.").

specifically commands the person serving the writ of injunction to "complete and file a return in accordance with Rule 107." Tex. R. Civ. P. 689. Thus, even if service of the writ of injunction had been sufficient to justify a default judgment on the underlying modification suit, Cady's failure to abide by Rule 107's strict instructions prevented the trial court from exercising jurisdiction over Brandon. We sustain Brandon's first issue.

## IV. CONCLUSION

Cady failed to effectuate service of the petition to modify on Brandon. Although she served Brandon's mother in an attempt at substituted service, it appears that only a citation regarding temporary orders was delivered. Numerous deficiencies in that service, moreover, would have invalidated it in any event. Because we sustain Brandon's first issue, we do not reach his remaining issues.[5] *See* Tex. R. App. P. 47.1. We reverse the default judgment and remand this case to the trial court for proceedings consistent with this opinion.

/s/ Dana Womack
Dana Womack
Justice

Delivered: January 6, 2022

---

[5]The Child Support Division of the Office of the Attorney General filed a letter in this Court indicating that it would decline to file a brief. In its letter, the office asserted that the trial court's child support order exceeded the amounts calculable under the guidelines in the Family Code, thus constituting "error on the face of the record." Given the outcome of Brandon's arguments on appeal, we decline to express an opinion on this issue.